# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SAMMY KIDD**,

      Plaintiff,

vs.                      No. **04-CV-1355 MCA/ACT**

**CITY OF ALBUQUERQUE, NEW MEXICO,**
**MARTIN CHAVEZ, Mayor,**
**JAMES LEWIS, Chief Administrative Officer,**
**and VALORIE VIGIL, Director of Family and**
**Community Services,**

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support* [Doc. 41], filed August 9, 2005; *Defendants' Motion for Summary Judgment* [Doc. 42], filed August 9, 2005; and *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* [Doc. 50], filed August 19, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support;* grants in part and denies in part *Defendants' Motion for Summary Judgment;* and grants in part and denies in part *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof.*

## I. BACKGROUND

The pertinent factual allegations as taken from the *Complaint* and the briefs are as follows: Sammy Kidd began working for the City of Albuquerque ("the City") as a student aide in 1987. In 1994, Kidd secured a position as a temporary recreation leader with the City. That year, Kidd began working in the City's boxing program and by 1995 was running the Northside Boxing Club Program. In this capacity, Kidd was working just under 40 hours per week and also acting as community center manager. The Northside program closed in 1999 and Kidd moved on to the Barelas Community Center's boxing program. He worked as a recreation leader and boxing trainer at Barelas until it closed in 2001. In 2001, Kidd transferred to the Jack Candelaria Community Center where he worked as a boxing trainer and supervisor of the boxing program. [Doc. 1, Exh. A at 2].

Although Kidd worked for more than ten years without a break in service, he had always been considered and paid as a "temporary" employee, never earning more than $7.00 per hour. Additionally, during his tenure with the City, Kidd worked with children at the community centers outside his regular work hours without receiving compensation. This work included taking the children on weekend trips to attend and participate in boxing matches and tournaments. [Doc. 1, Exh. A at 2-3].

On July 26, 2004, Kidd received a memo from Patricia D. Miller, the City's Director of Human Resources, notifying him of his termination, effective August 6, 2004. On August 16, 2004, Kidd, through counsel, requested that Chief Administrative Officer (CAO) James Lewis set aside the termination and reclassify Kidd as a permanent employee. Alternatively,

counsel asked that the matter be set for a hearing in accordance with the applicable section of the City's Merit System Ordinance. Counsel's requests were ignored. Because Kidd was deemed a temporary employee, he was not eligible for benefits provided to regular, permanent City employees. Because he was deemed an at-will employee, Kidd was denied access to the City's grievance procedures. [Doc. 1, Exh. A at 3-4].

On October 20, 2004, Kidd filed his five-count *Complaint* against the City, Mayor Martin Chavez, CAO Lewis, and Director of Department and Family Community Services Valorie Vigil. [Doc. 1, Exh. A at 1]. Count One asserts a claim for breach of employment contract, alleging that Kidd and the City were parties to a contract of employment consisting of the City's Merit System Ordinance ("the MSO") and its Personnel Rules and Regulations ("the PRR"). The MSO divides City employees into classified and unclassified employees, the latter group being made up of, among others, temporary and seasonal employees. The PRR defines a temporary employee as one who is given a termination date at the time of hire and whose length of service may not exceed two years. A seasonal employee is defined as one who has been hired to work no more than 9 months in a 12-month period. In light of these MSO and PRR provisions, Kidd alleges that Defendants breached their contractual duties "by failing to either terminate Plaintiff's employment or reclassify him as a permanent, classified employee after his first two years of City employment." [Id. at 4-5]. Moreover, by then treating Kidd as a temporary employee when he was effectively permanent, Defendants breached the employment contract by denying Kidd benefits received by permanent employees. [Id. at 5].

3

Count Two asserts that Defendants violated Kidd's right to due process, explaining that because Kidd was effectively a permanent employee, he had a property interest in his employment and could not be terminated without pre- and post-termination hearings. [Doc. 1, Exh. A at 5-6]. Count Three asserts a claim of wrongful termination and seeks reinstatement and reclassification as a classified employee, as well as an award of back pay and benefits. [Id. at 6-7]. In Count Four, Kidd contends that Defendants violated the Fair Labor Standards Act ("the FLSA") by failing to compensate him for after-hours and weekend work. [Id. at 7]. Finally, in Count Five Kidd seeks injunctive or extraordinary relief in the form of a hearing, reinstatement to a permanent, classified position, and "the wages and benefits to which he was entitled as a permanent, classified employee." [Id. at 7-8].

Kidd now seeks summary judgment with respect to Counts One, Two, and Three. [See generally Doc. 41]. Defendants have also moved for summary judgment, arguing that the entire *Complaint* should be dismissed because there exist no disputed issues of material fact. [See generally Doc. 42]. Additionally, Defendants have moved to strike a number of exhibits attached to Kidd's motion for partial summary judgment. [See generally Doc. 50]. These motions are addressed in turn.

## II. ANALYSIS

## A. Standard of Review

### 1. Fed.R.Civ.P. 56(c)

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as

to any material fact and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  See id. at 248.  Judgment is appropriate as a matter of law if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotation omitted).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

**B. Motions for Summary Judgment/Partial Summary Judgment [Docs. 41 and 42]**

5

**1. Breach of Employment Contract (Count One)**

Kidd contends that he and the City were parties to a contract consisting of, in part, the MSO and the PRR, the terms of which the City breached by (1) failing to terminate his employment or reclassify him as a permanent, classified employee after his first two years of service; (2) keeping him in the position of a full-time, unclassified employee, even though he did not receive a fixed date of termination at the time he was hired; and (3) employing him as a "seasonal" employee for more than nine months each year he worked for the City. [Doc. 41 at 15]. While it does not dispute that the MSO and the PRR create a contract, the City maintains that that contract "specifically reconfirms the at-will nature of the relationship between a seasonal employee and the city." [Doc. 49 at 10].

In New Mexico, employment without a definite term is presumed to be at-will, which means that both the employer and the employee have the right to terminate the employment relationship at any time and for any reason. Trujillo v. Northern Rio Arriba Elec. Co-op, Inc., 41 P.3d 333, 341 (N.M. 2001). An exception to this rule of at-will employment exists "where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge." Lopez v. Kline, 953 P.2d 304, 306 (N.M. App. 1997). The existence of an implied contract is generally a question of fact, and the factfinder must examine the totality of circumstances surrounding the employment relationship when considering whether an employer made a promise modifying the employment relationship. Gormley v. Coca-Cola Enter., 85 P.3d 252, 258 (N.M.App. 2003).

"An implied contract may be found in written or oral representations, in the conduct

6

of the parties, or in a combination of representations and conduct." Gormley, 85 P.2d at 259

(citing Newberry v. Allied Stores, Inc., 773 P.2d 1231, 1234-35 (1989)).  In Newberry, the

Court explained that

> [u]nder New Mexico law, a personnel manual gives rise to an
> implied contract if it controlled the employer-employee
> relationship and an employee could reasonably expect his
> employer to conform to the procedures it outlined. However,
> whether an employee handbook has modified the employment
> relationship is a question of fact to be discerned from the totality
> of the parties' statements and actions regarding the employment
> relationship.  Evidence relevant to this factual decision includes
> the language used in the personnel manual as well as the
> employer's course of conduct and oral representations regarding
> it.

Newberry,  773 P.2d at 1234 (internal citations omitted).

In this case, the Court is unable to say as a matter of law that no implied contract

existed between Kidd and the City, such that the original at-will employment relationship

was modified.  This determination is based on the language of the MSO and the PRR, as well

as the actions of the City.  The PRR defines a temporary employee as "one who is given a

termination date at the time of appointment and whose length of service may not exceed two

(2) years." [Doc. 43, Exh. C at § 306.3].  The PRR also states that "[t]emporary employees

*shall* be terminated two (2) years from the date of hire."  [Id. (emphasis added)]. For its part,

the MSO includes as members of the unclassified service "[t]emporary and seasonal

employees *employed as such*."  [Doc. 43, Exh. C at § 3-1-6(C)(5) (emphasis added)].  In

light of the fact that he was employed by the City for more than ten years, the Court cannot

say as a matter of law that Kidd, who was initially hired as a temporary employee, was

actually "employed as such" at the time of his termination.  The "employed as such" language, the City's own mandate that temporary employees' tenure not exceed two years, and the fact that Kidd was kept on with the City for more than ten years constitute the types of statements and actions that create a question of fact as to whether there existed an implied contract sufficient to modify Kidd's original at-will employment status.  See Newberry, 773 P.2d at 1234.

### a. Defendants' Statute of Limitations Argument

Defendants contend that any viable contract claims Kidd might assert are barred by the applicable statute of limitations.  According to Defendants, Kidd should have filed his breach-of-contract claims no later than two years after the date on which the breach occurred.  Defendants submit that "[t]he latest date on which the plaintiff could have brought his claim was September 8, 2000, two years after city records show that plaintiff was rehired after his break in service on September 8, 1998."  [Doc. 43 at 9].

New Mexico follows the "single wrong" theory in breach-of-employment-contract/failure-to-promote cases.  See Tull v. City of Albuquerque, 907 P.2d 1010, 1012 (N.M.App. 1995).  This theory holds that there is one initial breach that triggers the applicable statute of limitations, even though that one breach may cause continuing effects.  Id. at 1011.

The plaintiffs in Tull were City of Albuquerque employees who began performing additional job duties in November 1987.  Although their job titles and responsibilities were changed, plaintiffs did not receive the corresponding pay raise to which they were entitled

under the City's MSO.  Tull, 907 P.2d at 1010.  Plaintiffs filed suit in June 1994, arguing that a new breach of contract was committed each time they received a paycheck that did not include the raise they were due.  Id. at 1010-11.  The City countered that there was only a single (alleged) breach of contract, namely the City's initial failure to give plaintiffs a pay raise at the time they assumed their additional duties in 1987.  Id. at 1011.  For purposes of appellate review, the City admitted that "the initial breach of contract ha[d] continuing effects in that each paycheck issued to Plaintiffs [was] lower than it might otherwise have been if Plaintiffs had received the raise they expected."  Id.  Still, the City maintained that "these continuing consequences ha[d] no effect on the statute of limitations and that, for limitations purposes, the only triggering event [was] the initial breach of contract."  Id.

The New Mexico Court of Appeals concluded that the "single wrong" theory would be applied under the circumstances because the Tull plaintiffs, who were employed pursuant to a contract that existed prior to November 1987, were attempting to force the City to make changes to that contract that they believed were required by contract law and the MSO. Acknowledging that the breach had continuing consequences in the form of lower paychecks, the Court explained that those effects "did not extend the life of Plaintiffs' breach of contract cause of action, which [was] based solely on [the] initial refusal [by the City to increase plaintiffs' salaries]."  Tull, 907 P.2d at 1013.

To determine when the limitations period begins to run in the present action, this Court must identify precisely the unlawful employment practice of which Kidd complains. See Delaware State College v. Ricks, 449 U.S. 250, 257 (1980) ("Determining the timeliness

of [Plaintiff's] . . . lawsuit, requires us to identify precisely the 'unlawful employment practice' of which he complains."). According to Kidd's *Complaint*, "Defendants breached their contractual duty by failing to either terminate [his] employment or reclassify him as a permanent, classified employee after his *first two* years of City employment." [Doc. 1, Exh. A at 5 (emphasis added)]. Defendants cite N.M.Stat.Ann. § 37-1-23(B), which concerns the limitations period applicable to actions asserting contractual liability and provides that "[e]very claim permitted by this section shall be forever barred unless brought within two years from the time of accrual." N.M.Stat.Ann. § 37-1-23(B).

The Court concludes that the "single wrong" theory enunciated in <u>Tull</u> applies here, and that the two-year statute of limitations bars Kidd's breach-of-contract claim. It is undisputed that Kidd began working for the City on May 30, 1994. [<u>See</u> Doc. 41 at 2; Doc. 49 at 1]. The alleged breach here, as defined both by the *Complaint* and *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support*, is the City's failure to take action (either termination or reclassification) at the expiration of the two-year term of service that, in part, defines temporary City employees. [<u>See</u> Doc. 1, Exh. A at 5, ¶ 28, "Defendants had a contractual duty to follow the Rules and Regulations and the Merit System Ordinance. Defendants breached their contractual duty by failing to either terminate Plaintiff's employment or reclassify him as a permanent, classified employee after his first two years of City employment."].[1] Thus, the alleged breach is deemed to have occurred no later than

---

[1] In his motion for partial summary judgment, Kidd asserts that Defendants breached their contractual duty by (1) failing either to terminate or reclassify him as a permanent, classified

10

May 30, 1996.[2]  Whether there have been continuing effects of this initial breach in the form of, for example, denial of a classified employee's salary, seniority, job security, promotions, and recognition, [see Doc. 41 at 16], "the continuing effects do not extend the life of [Kidd's] breach of contract cause of action . . . ."  Tull, 907 P.2d at 1013.  Accordingly, the Court concludes that Kidd's contract claims are time-barred, and Defendants' motion for summary judgment as to this issue will be granted.

## 2. Denial of Procedural Due Process (Count Two)

Kidd and Defendants next move for summary judgment on Kidd's due process claim. Kidd's allegation of a denial of procedural due process stems from the City's alleged deprivation of such benefits as continued employment and an opportunity to be heard prior to termination, benefits that the MSO extends to permanent City employees.

Whether an individual has been denied procedural due process requires the Court to determine (1) if the individual possessed a protected interest such that due process protections were applicable, and, if so, (2) whether the individual was afforded an

---

employee after his first two years of City employment; (2) keeping him in the position of a full-time unclassified employee even though he had never been given a fixed date of termination at the time he was hired; and (3) employing him as a seasonal employee for more than nine months per year for the term of his tenure with the City.  [Doc. 41 at 15].

[2]  The City argues that the latest Kidd could have filed a breach-of-contract action was September 8, 2000, since City records show that Kidd was rehired after a break in service on September 8, 1998, and September 8, 2000 would have been two years after the date of Kidd's rehire.  [Doc. 43 at 9].  The Court has tried to pinpoint the date of the alleged breach on the basis of Kidd's allegations as set forth in his pleadings. Even accepting the later date offered by the City, however, Kidd's contract claims still would be time-barred, since Kidd filed his *Complaint* on October 20, 2004. [See Doc. 1, Exh. A at 1].

appropriate level of process.  <u>Farthing v. City of Shawnee, Kan.</u>, 39 F.3d 1131, 1135 (10th Cir. 1994).  In the case of a public employee, "the touchstone is whether, under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it."  <u>Id.</u>  Whether an employee possessed a protected property interest must be determined by reference to state law, and "any of several sources of state law, including a local government's personnel policy manual, can create a property interest protected by the Due Process Clause."  <u>Hatfield v. Bd. of County Comm'rs for Converse County</u>, 52 F.3d 858, 863 (10th Cir. 1995).  Central to the inquiry is whether the employee was an at-will employee at the time of termination.  <u>Id.</u>

For the reasons stated in Section II.B.1. above, the Court cannot say as a matter of law that Kidd's original at-will employment relationship with the City was not modified.[3]  Again, if Kidd was not a temporary employee "employed as such," the question remains whether he was properly labeled a member of the unclassified service.  Since "[a]ll employees in the city service shall be divided into unclassified service and classified service[,]" if Kidd was not properly labeled an unclassified employee, he arguably should have been considered a classified employee.  [<u>See</u> Doc. 43, Exh. C at § 3-1-6(A).  If Kidd should have been considered a member of the classified service, then he was entitled to the due process protections he claims he was denied.  Accordingly, summary judgment will be denied all parties as to Count Two.

_____

[3]  Whether Kidd's at-will employment relationship with the City was modified is a separate issue from whether breach-of-contract claims arising from an alleged modified employment relationship are time-barred.

### 3. Wrongful Termination (Count Three)

Kidd and Defendants next move for summary judgment on Count Three, wherein Kidd asserts that he was wrongfully terminated in violation of public policy. [See Doc. 41 at 21]. "Governmental entities and public employees, while acting within the scope of duty, are granted immunity from liability from tort except as waived by the specific provisions of the Tort Claims Act." Derringer v. State, 68 P.3d 961, 965 (N.M.App. 2003) (concluding that prima facie tort is not included in the specific waiver provisions of the Tort Claims Act).

Sections 41-4-5 through 41-4-12 of the Tort Claims Act identify those torts for which governmental immunity is waived. Wrongful termination is not among them. See N.M.Stat.Ann. §§ 41-4-5 to 41-4-12. Because Kidd has not demonstrated that Defendants' actions in allegedly wrongfully terminating him fell within a recognized exception to the immunity granted by the Tort Claims Act, summary judgment will be entered for Defendants on Count Three. See Silva v. Town of Springer, 912 P.2d 304, 311 (N.M.App. 1996) (concluding that terminated town employees failed to show that tort of wrongful discharge fell within a recognized exception to the immunity afforded by the Tort Claims Act); see also Ortega v. Madrid, No. CIV 00-1414 JP/RLP (Memo.Op. and Order entered March 7, 2001) at 7 (explaining that wrongful termination is not among those torts for which the State of New Mexico has waived its immunity).

### 4. Violations of the Fair Labor Standards Act (Count Four)

Kidd's next claim is one for violations of the FLSA. Defendants have moved for summary judgment on Kidd's FLSA claim on the ground that Kidd has failed to present

sufficient evidence that would establish an entitlement to the overtime compensation he seeks. [Doc. 43 at 12-14]. In an action to recover overtime pay under the FLSA, the burden rests upon the employee to show that he performed overtime work for which he was not properly compensated "and to show the extent and amount of such work as a matter of just and reasonable inference." Mitchell v. Caldwell, 249 F.2d 10, 11 (10th Cir. 1957), *accord* Noorda v. Chaparral Fire Protection, Inc., 2005 WL 783072 at *2 (D.Utah 2005).

Kidd contends that Defendants' failure to compensate him for weekend and after-hours work where he trained children for, and transported them to, boxing tournaments resulted in violations of the minimum and overtime wage provisions of the FLSA. He seeks payment of back wages. [Doc. 1, Exh. A at 7]. The Court notes that in his deposition testimony, however, Kidd stated that his work training children to box was voluntary and that he did not expect to be paid for it. [Doc. 43, Exh. B, Apr. 25, 2005 depo. of Sammy Kidd at 26]. Kidd also testified that he was informed that he would not be paid to work overtime. [Id., Exh. B, Apr. 25, 2005 depo. of Sammy Kidd at 30]. He further explained that he never complained about working overtime and never submitted time sheets reflecting the overtime hours he now claims to have worked. [Id., Exh. B, Apr. 25, 2005 depo. of Sammy Kidd at 51-52]. Because the Court concludes that Kidd has failed to satisfy his burden of showing that he performed overtime work or, if he did, the extent and amount of that work, see Mitchell, 249 F.2d at 11, summary judgment will be entered for Defendants on Count Four.

### 5. Mandamus Relief (Count Five)

Kidd's final allegation is that, under the circumstances, his termination "constituted[d] the infliction of irreparable harm without due process of law in violation of the rules and ordinances of the City of Albuquerque." [Doc. 1, Exh. A at 8]. As relief, Kidd requests

> preliminary and permanent injunctive relief or an extraordinary writ of mandamus or superintending control requiring the City of Albuquerque to hold a hearing, to reinstate him to a position of permanent, non-temporary, classified employment and to award the wages and benefits to which he was entitled as a permanent, classified employee.

[Id.]. Defendants move for summary judgment, asserting that Kidd has not been irreparably harmed and that, even if he prevails in this matter, he has an adequate remedy at law. Defendants also note that Kidd's requested relief is appointment to a permanent, classified position, but that he has not applied for one. [Doc. 43 at 14-16].

"Mandamus relief is appropriate only when the person seeking such relief can show a duty owed to him by the government official to whom the writ is directed that is ministerial, clearly defined and peremptory." Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419, Broth. of Painters and Allied Trades, AFL-CIO v. Brown, 656 F.2d 564, 566 (10th Cir. 1981) (quoting Schulke v. United States, 544 F.2d 453, 455 (10th Cir. 1976). Additionally, "[u]nder New Mexico law, 'mandamus lies to compel the performance of an affirmative act by [an official] where the duty to perform the act is clearly enjoined by law and where there is no other plain, speedy and adequate remedy in the ordinary course of law.'" County of Santa Fe, N.M. v. Public Serv. Co. of New Mexico, 311 F.3d 1031, 1035 (10th Cir. 2002) (quoting Lovato v. City of Albuquerque, 742 P.2d 499, 501 (N.M. 1987).

15

In this case, nothing in the record before the Court suggests that Defendants are obligated under a ministerial duty to appoint Kidd or anyone else to a permanent, classified position with the City.  In fact, the opposite may be true inasmuch as vacant positions are filled by a "post and bid" process whereby interested parties must apply for those jobs before an appointment is made.  Also, Kidd has not demonstrated that he has no plain, speedy, and adequate remedy other than the extraordinary relief he seeks.  For these reasons, summary judgment will be entered for Defendants on Count Five.

## C. Immunity

### 1. Individual Defendants' Entitlement to Qualified Immunity

Defendants' final argument is that all claims against the individual Defendants should be dismissed on the basis of qualified immunity, since Kidd has not shown that the actions of the individual Defendants violated a constitutional or statutory right that was clearly established at the time of the conduct at issue.  The City similarly asserts that it is immune from suit because that Kidd has not demonstrated that its alleged unconstitutional actions were representative of official policy or custom or that any such actions were carried out by an official with final policy making authority.  [Doc. 43 at 16-21].

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable  person would have known."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998) (internal quotations omitted). "In the context of a summary judgment motion, to

16

prevail against a qualified immunity defense, the plaintiff must 'come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the violation occurred.'" Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1026 (10th Cir. 1994) (*quoting* Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988). Only if the plaintiff satisfies both elements does the defendant bear the normal burden of the summary-judgment movant of showing that no material factual issues remain to defeat his claim of qualified immunity. Id. A plaintiff ordinarily demonstrates that a law is clearly established by showing a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts has determined the law to be as the plaintiff maintains. Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (a right is clearly established if the contours of the right are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right.")

Plaintiff's burden in this situation is not a light one. Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992) ("A defendant government official need only raise the qualified immunity defense to shift the summary judgment burden to the plaintiff. This burden is quite heavy, for the plaintiff must do more than simply allege the violation of a general legal precept.") Also, a district court's determination as to whether the right is clearly established often turns on the level of generality to be applied, for "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter v. Dep't of Public Safety, 159 F.3d 1265, 1278 (10th

Cir. 1998).

This Court has concluded that the only one of Kidd's claims to survive summary judgment is that for the denial of procedural due process, as asserted in Count Two of the *Complaint*. Whether Kidd prevails on this claim turns on whether his initial at-will employment relationship with the City was somehow modified such that he became entitled to the benefits and protections covering members of the classified service. To survive the individual Defendants' invocation of qualified immunity, Kidd must show that the MSO and PRR created "a clearly established right to his continued employment, such that [the individual Defendants] or . . . objectively reasonable official[s] similarly situated, would have known [they] could not terminate [Kidd] without affording him procedural due process . . . ." Cockrell v. Bd. of Regents of NMSU, 983 P.2d 427, 430 (N.M. App. 1999). It is the clarity of the employment relationship, or the lack thereof, that may well determine whether legal rights were clearly established at the time of discharge, however those right might ultimately be defined at trial for breach of contract. Id. at 431. Here, as in Cockrell, success for Kidd success depends on his ability to establish an implied contractual expectancy in continued employment. However, "contractual ambiguity regarding the existence of a legitimate expectancy in continued employment makes it difficult to demonstrate that a summary discharge violated clearly established rights in the discharged employee." Cockrell, 983 P.2d at 431; see also Derda v. City of Brighton, Colo., 53 F.3d 1162, 1166 (10th Cir. 1995) (where it was unclear that Colorado statute intended to confer on employees an interest in continued employment, plaintiff had, at a minimum, failed to demonstrate that

any right violated was clearly established at the time she was terminated).  Because a factual issue must be resolved in order to determine whether Kidd had a property interest in continued employment, Kidd could not have had a "'clearly established right to employment of which the [individual D]efendants should reasonably have known.'"  Mitchell v. Coffey County Hosp., 903 F.Supp. 1415, 1426-27 (D.Kan. 1995) (*quoting* Staneart v. Bd. of Trs. of Ransom Mem'l Hosp., 684 F.Supp. 1573, 1578 (D.Kan.1988)).  The individual Defendants are therefore entitled to qualified immunity.

### 2. Municipal Liability

While municipalities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights,  a municipality will not be held liable for the actions of its employees under a theory of *respondeat superior*.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-691 (1978). Instead, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" causing the complained-of injury.  Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1177 (10th Cir. 2003).  An unconstitutional deprivation is caused by a municipal "policy" if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself.   "Custom" has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403, 404 (1997).

In this case, the Court concludes that the City is not entitled to immunity, since evidence in the record establishes that there were City employees in addition to Kidd who

were labeled "temporary" or "seasonal" but not actually employed as such.  For example, currently pending before the Court is *Plaintiff's Motion for Class Action Certification*, in which Kidd seeks to represent a class of City employees who were labeled as "temporary" or "seasonal" but who worked in their "temporary" positions for more than 2 years without a fixed termination date or as "seasonal" employees for more than 9 months in a 12-month period.  [See Doc. 32 at 1].  According to Kidd, he and the proposed class members were denied the wages, benefits, working conditions, and rights of classified employment, including but not limited to, the right to continued employment in the absence of just cause for discipline, due process, and equal protection of the laws.  [Id. at 2].  Kidd represents that the proposed class members number more than 70 in the Department of Family and Community Services alone, and that his claims are typical of those of the proposed class.  [Id. at 2-3].  The Court determines that Kidd's allegations are sufficient to raise a genuine dispute of material fact as to whether the City had a custom of treating its "temporary" and "seasonal" employees as Kidd maintains.  Cf. Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir. 1995).  For that reason, the City is not entitled to the immunity it seeks.

**D. Motion to Strike Exhibits [Doc. 50]**

Defendants next move to strike Exhibits 2, 5, 6, 7, and 8 to Kidd's motion for partial summary judgment.  [Doc. 50].  Defendants assert that these exhibits do not conform to the requirements of Fed.R.Civ.P. 56(e) because (1) they are unidentified and unauthenticated (Exhs. 5-8); (2) they do not support Kidd's claim for partial summary judgment and are irrelevant for the purpose of his motion (Exhs. 6-8); and (3) Kidd failed to mention or refer

to them in his brief (Exhs. 2 and 8).  [Id. at 3-6].  The party moving for summary judgment bears the initial responsibility of informing the Court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)).  Only admissible evidence may be considered by a Court entertaining a summary-judgment motion, though "[e]vidence that is neither authenticated nor admissible 'may be considered by the district Court unless the opposing party affirmatively raises the issue of the defect.'"  Steele v. Jennings, 2005 WL 2124152 at *3 (S.D.Ohio 2005) (quoting McQuain v. Ebner Furnaces, Inc., 55 F.Supp.2d 763, 770 (N.D.Ohio 1999)).

With respect to Exhibits 5, 6, and 7, Kidd contends that because Defendants produced them, they must be authentic.  [See Doc. 67 at 2-3].  However, "[s]imply because the Defendants produced the documents does not make them authentic—production does not equate to authentication."  Steele, 2005 WL 2124152 at *3.  Although counsel for Kidd has attached to the response to the motion to strike an affidavit swearing that Exhibits 5, 6, and 7 were produced by the City in response to interrogatories propounded to Defendant Valorie Vigil, [Doc. 67, Sept. 23, 2005 affidavit of Paul Livingston], the affidavit does not make any statement indicating that Exhibits 5, 6, and 7 are true, complete, or correct.  See Appleby v. Glaxo Wellcome, Inc., 2005 WL 3440440 at * 3 (D.N.J. 2005) (striking exhibit for which counsel provided affidavit claiming personal knowledge but failing to establish the genuineness of the exhibit or indicate it was true, complete, or correct).  For this reason,

21

Defendants' motion to strike will be granted as to Exhibits 5, 6, and 7.

The motion will also be granted with respect to Exhibit 8. Exhibit 8 consists of Internet new articles detailing lawsuits brought by long-time temporary employees and so-called "permatemps" in other jurisdictions. [See Doc. 41, Exh. 8]. Assuming without deciding that the articles included in Exhibit 8 have been established as genuine, true, complete, and correct, they appear to be offered to prove the truth of the information reported therein and, as such, constitute hearsay. Where a party offers newspaper articles to prove the information contained in them, they are hearsay and may not be considered on a motion for summary judgment. Good v. Board of County Comm'rs of County of Shawnee, Kan., 331 F.Supp.2d 1315, 1327 (D.Kan. 2004) (quoting Chicago Firefighters Local 2 v. City of Chicago, 249 F.3d 649, 654 (7th Cir.), cert. denied, 534 U.S. 995 (2001)). According, Exhibit 8 will be stricken.

Defendants lastly move to strike Exhibit 2 on the ground that it was not referenced in Kidd's motion for partial summary judgment, which "provides the inference that [Exhibit 2 does] not support either a factual assertion or an argument presented by plaintiff in his brief." [Doc. 50 at 5-6]. The Court disagrees that Exhibit 2, the affidavit of Kidd's father, supports neither a factual assertion nor an argument presented by Kidd. To the contrary, in Exhibit 2 Tony Castro represents that, on two separate occasions, City personnel informed him that certain temporary employees might be considered permanent. [See Doc. 41, Exh. 2 at 2-3]. Such an allegation bears on the issue of whether Kidd's initial at-will employment relationship with the City was at some point modified, which, in turn, is relevant to the claim

in Count Two that Kidd was denied benefits and protections extended to permanent City employees.  Because the Court concludes that Exhibit 2 is relevant, the motion to strike will be denied with respect to this exhibit.

## III. CONCLUSION

Based upon the foregoing, *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support* is denied; *Defendants' Motion for Summary Judgment* is granted in part and denied in part; and *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* is granted in part and denied in part.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support* [Doc. 41] is **DENIED**;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 42] is **GRANTED** to the extent that the individual Defendants (Martin Chavez, James Lewis, Valorie Vigil) assert the defense of qualified immunity;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 42] is **GRANTED** as to Counts One, Three, Four, and Five;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 42] is **DENIED** to the extent the City of Albuquerque asserts the defense of qualified

23

immunity;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 42] is **DENIED** as to Count Two;

**IT IS FURTHER ORDERED** that *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* [Doc. 50] is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* [Doc. 50] is **GRANTED** as to Exhibits 5, 6, 7, and 8;

**IT IS FURTHER ORDERED** that *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* [Doc. 50] is **DENIED** as to Exhibit 2.

**SO ORDERED** this 31st day of March, 2006, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SAMMY KIDD**,

       Plaintiff,

     vs.                            No. **04-CV-1355 MCA/ACT**

**CITY OF ALBUQUERQUE, NEW MEXICO,**
**MARTIN CHAVEZ, Mayor,**
**JAMES LEWIS, Chief Administrative Officer,**
**and VALORIE VIGIL, Director of Family and**
**Community Services,**

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support* [Doc. 41], filed August 9, 2005; *Defendants' Motion for Summary Judgment* [Doc. 42], filed August 9, 2005; and *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* [Doc. 50], filed August 19, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support;* grants in part and denies in part *Defendants' Motion for Summary Judgment;* and grants in part and denies in part *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof.*

## I. BACKGROUND

The pertinent factual allegations as taken from the *Complaint* and the briefs are as follows: Sammy Kidd began working for the City of Albuquerque ("the City") as a student aide in 1987. In 1994, Kidd secured a position as a temporary recreation leader with the City. That year, Kidd began working in the City's boxing program and by 1995 was running the Northside Boxing Club Program. In this capacity, Kidd was working just under 40 hours per week and also acting as community center manager. The Northside program closed in 1999 and Kidd moved on to the Barelas Community Center's boxing program. He worked as a recreation leader and boxing trainer at Barelas until it closed in 2001. In 2001, Kidd transferred to the Jack Candelaria Community Center where he worked as a boxing trainer and supervisor of the boxing program. [Doc. 1, Exh. A at 2].

Although Kidd worked for more than ten years without a break in service, he had always been considered and paid as a "temporary" employee, never earning more than $7.00 per hour. Additionally, during his tenure with the City, Kidd worked with children at the community centers outside his regular work hours without receiving compensation. This work included taking the children on weekend trips to attend and participate in boxing matches and tournaments. [Doc. 1, Exh. A at 2-3].

On July 26, 2004, Kidd received a memo from Patricia D. Miller, the City's Director of Human Resources, notifying him of his termination, effective August 6, 2004. On August 16, 2004, Kidd, through counsel, requested that Chief Administrative Officer (CAO) James Lewis set aside the termination and reclassify Kidd as a permanent employee. Alternatively,

2

counsel asked that the matter be set for a hearing in accordance with the applicable section of the City's Merit System Ordinance. Counsel's requests were ignored. Because Kidd was deemed a temporary employee, he was not eligible for benefits provided to regular, permanent City employees. Because he was deemed an at-will employee, Kidd was denied access to the City's grievance procedures. [Doc. 1, Exh. A at 3-4].

On October 20, 2004, Kidd filed his five-count *Complaint* against the City, Mayor Martin Chavez, CAO Lewis, and Director of Department and Family Community Services Valorie Vigil. [Doc. 1, Exh. A at 1]. Count One asserts a claim for breach of employment contract, alleging that Kidd and the City were parties to a contract of employment consisting of the City's Merit System Ordinance ("the MSO") and its Personnel Rules and Regulations ("the PRR"). The MSO divides City employees into classified and unclassified employees, the latter group being made up of, among others, temporary and seasonal employees. The PRR defines a temporary employee as one who is given a termination date at the time of hire and whose length of service may not exceed two years. A seasonal employee is defined as one who has been hired to work no more than 9 months in a 12-month period. In light of these MSO and PRR provisions, Kidd alleges that Defendants breached their contractual duties "by failing to either terminate Plaintiff's employment or reclassify him as a permanent, classified employee after his first two years of City employment." [Id. at 4-5]. Moreover, by then treating Kidd as a temporary employee when he was effectively permanent, Defendants breached the employment contract by denying Kidd benefits received by permanent employees. [Id. at 5].

3

Count Two asserts that Defendants violated Kidd's right to due process, explaining that because Kidd was effectively a permanent employee, he had a property interest in his employment and could not be terminated without pre- and post-termination hearings. [Doc. 1, Exh. A at 5-6]. Count Three asserts a claim of wrongful termination and seeks reinstatement and reclassification as a classified employee, as well as an award of back pay and benefits. [Id. at 6-7]. In Count Four, Kidd contends that Defendants violated the Fair Labor Standards Act ("the FLSA") by failing to compensate him for after-hours and weekend work. [Id. at 7]. Finally, in Count Five Kidd seeks injunctive or extraordinary relief in the form of a hearing, reinstatement to a permanent, classified position, and "the wages and benefits to which he was entitled as a permanent, classified employee." [Id. at 7-8].

Kidd now seeks summary judgment with respect to Counts One, Two, and Three. [See generally Doc. 41]. Defendants have also moved for summary judgment, arguing that the entire *Complaint* should be dismissed because there exist no disputed issues of material fact. [See generally Doc. 42]. Additionally, Defendants have moved to strike a number of exhibits attached to Kidd's motion for partial summary judgment. [See generally Doc. 50]. These motions are addressed in turn.

## II. ANALYSIS

### A. Standard of Review

#### 1. Fed.R.Civ.P. 56(c)

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as

to any material fact and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  See id. at 248.  Judgment is appropriate as a matter of law if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence;  conclusory and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotation omitted).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

**B. Motions for Summary Judgment/Partial Summary Judgment [Docs. 41 and 42]**

5

**1. Breach of Employment Contract (Count One)**

Kidd contends that he and the City were parties to a contract consisting of, in part, the MSO and the PRR, the terms of which the City breached by (1) failing to terminate his employment or reclassify him as a permanent, classified employee after his first two years of service; (2) keeping him in the position of a full-time, unclassified employee, even though he did not receive a fixed date of termination at the time he was hired; and (3) employing him as a "seasonal" employee for more than nine months each year he worked for the City. [Doc. 41 at 15]. While it does not dispute that the MSO and the PRR create a contract, the City maintains that that contract "specifically reconfirms the at-will nature of the relationship between a seasonal employee and the city." [Doc. 49 at 10].

In New Mexico, employment without a definite term is presumed to be at-will, which means that both the employer and the employee have the right to terminate the employment relationship at any time and for any reason. Trujillo v. Northern Rio Arriba Elec. Co-op, Inc., 41 P.3d 333, 341 (N.M. 2001). An exception to this rule of at-will employment exists "where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge." Lopez v. Kline, 953 P.2d 304, 306 (N.M. App. 1997). The existence of an implied contract is generally a question of fact, and the factfinder must examine the totality of circumstances surrounding the employment relationship when considering whether an employer made a promise modifying the employment relationship. Gormley v. Coca-Cola Enter., 85 P.3d 252, 258 (N.M.App. 2003).

"An implied contract may be found in written or oral representations, in the conduct

of the parties, or in a combination of representations and conduct." Gormley, 85 P.2d at 259

(citing Newberry v. Allied Stores, Inc., 773 P.2d 1231, 1234-35 (1989)).  In Newberry, the

Court explained that

> [u]nder New Mexico law, a personnel manual gives rise to an
> implied contract if it controlled the employer-employee
> relationship and an employee could reasonably expect his
> employer to conform to the procedures it outlined. However,
> whether an employee handbook has modified the employment
> relationship is a question of fact to be discerned from the totality
> of the parties' statements and actions regarding the employment
> relationship. Evidence relevant to this factual decision includes
> the language used in the personnel manual as well as the
> employer's course of conduct and oral representations regarding
> it.

Newberry,  773 P.2d at 1234 (internal citations omitted).

In this case, the Court is unable to say as a matter of law that no implied contract

existed between Kidd and the City, such that the original at-will employment relationship

was modified.  This determination is based on the language of the MSO and the PRR, as well

as the actions of the City.  The PRR defines a temporary employee as "one who is given a

termination date at the time of appointment and whose length of service may not exceed two

(2) years." [Doc. 43, Exh. C at § 306.3].  The PRR also states that "[t]emporary employees

shall be terminated two (2) years from the date of hire." [Id. (emphasis added)]. For its part,

the MSO includes as members of the unclassified service "[t]emporary and seasonal

employees employed as such." [Doc. 43, Exh. C at § 3-1-6(C)(5) (emphasis added)].  In

light of the fact that he was employed by the City for more than ten years, the Court cannot

say as a matter of law that Kidd, who was initially hired as a temporary employee, was

actually "employed as such" at the time of his termination.  The "employed as such" language, the City's own mandate that temporary employees' tenure not exceed two years, and the fact that Kidd was kept on with the City for more than ten years constitute the types of statements and actions that create a question of fact as to whether there existed an implied contract sufficient to modify Kidd's original at-will employment status.  See Newberry, 773 P.2d at 1234.

### a. Defendants' Statute of Limitations Argument

Defendants contend that any viable contract claims Kidd might assert are barred by the applicable statute of limitations.  According to Defendants, Kidd should have filed his breach-of-contract claims no later than two years after the date on which the breach occurred.  Defendants submit that "[t]he latest date on which the plaintiff could have brought his claim was September 8, 2000, two years after city records show that plaintiff was rehired after his break in service on September 8, 1998."  [Doc. 43 at 9].

New Mexico follows the "single wrong" theory in breach-of-employment-contract/failure-to-promote cases.  See Tull v. City of Albuquerque, 907 P.2d 1010, 1012 (N.M.App. 1995).  This theory holds that there is one initial breach that triggers the applicable statute of limitations, even though that one breach may cause continuing effects. Id. at 1011.

The plaintiffs in Tull were City of Albuquerque employees who began performing additional job duties in November 1987.  Although their job titles and responsibilities were changed, plaintiffs did not receive the corresponding pay raise to which they were entitled

under the City's MSO.  Tull, 907 P.2d at 1010.  Plaintiffs filed suit in June 1994, arguing that a new breach of contract was committed each time they received a paycheck that did not include the raise they were due.  Id. at 1010-11.  The City countered that there was only a single (alleged) breach of contract, namely the City's initial failure to give plaintiffs a pay raise at the time they assumed their additional duties in 1987.  Id. at 1011.  For purposes of appellate review, the City admitted that "the initial breach of contract ha[d] continuing effects in that each paycheck issued to Plaintiffs [was] lower than it might otherwise have been if Plaintiffs had received the raise they expected."  Id.  Still, the City maintained that "these continuing consequences ha[d] no effect on the statute of limitations and that, for limitations purposes, the only triggering event [was] the initial breach of contract."  Id.

The New Mexico Court of Appeals concluded that the "single wrong" theory would be applied under the circumstances because the Tull plaintiffs, who were employed pursuant to a contract that existed prior to November 1987, were attempting to force the City to make changes to that contract that they believed were required by contract law and the MSO. Acknowledging that the breach had continuing consequences in the form of lower paychecks, the Court explained that those effects "did not extend the life of Plaintiffs' breach of contract cause of action, which [was] based solely on [the] initial refusal [by the City to increase plaintiffs' salaries]."  Tull, 907 P.2d at 1013.

To determine when the limitations period begins to run in the present action, this Court must identify precisely the unlawful employment practice of which Kidd complains. See Delaware State College v. Ricks, 449 U.S. 250, 257 (1980) ("Determining the timeliness

9

of [Plaintiff's] . . . lawsuit, requires us to identify precisely the 'unlawful employment practice' of which he complains."). According to Kidd's *Complaint*, "Defendants breached their contractual duty by failing to either terminate [his] employment or reclassify him as a permanent, classified employee after his *first two* years of City employment." [Doc. 1, Exh. A at 5 (emphasis added)]. Defendants cite N.M.Stat.Ann. § 37-1-23(B), which concerns the limitations period applicable to actions asserting contractual liability and provides that "[e]very claim permitted by this section shall be forever barred unless brought within two years from the time of accrual." N.M.Stat.Ann. § 37-1-23(B).

The Court concludes that the "single wrong" theory enunciated in <u>Tull</u> applies here, and that the two-year statute of limitations bars Kidd's breach-of-contract claim. It is undisputed that Kidd began working for the City on May 30, 1994. [<u>See</u> Doc. 41 at 2; Doc. 49 at 1]. The alleged breach here, as defined both by the *Complaint* and *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support*, is the City's failure to take action (either termination or reclassification) at the expiration of the two-year term of service that, in part, defines temporary City employees. [<u>See</u> Doc. 1, Exh. A at 5, ¶ 28, "Defendants had a contractual duty to follow the Rules and Regulations and the Merit System Ordinance. Defendants breached their contractual duty by failing to either terminate Plaintiff's employment or reclassify him as a permanent, classified employee after his first two years of City employment."].[1] Thus, the alleged breach is deemed to have occurred no later than

---

[1] In his motion for partial summary judgment, Kidd asserts that Defendants breached their contractual duty by (1) failing either to terminate or reclassify him as a permanent, classified

10

May 30, 1996.[2]  Whether there have been continuing effects of this initial breach in the form of, for example, denial of a classified employee's salary, seniority, job security, promotions, and recognition, [see Doc. 41 at 16], "the continuing effects do not extend the life of [Kidd's] breach of contract cause of action . . . ."  Tull, 907 P.2d at 1013.  Accordingly, the Court concludes that Kidd's contract claims are time-barred, and Defendants' motion for summary judgment as to this issue will be granted.

### 2. Denial of Procedural Due Process (Count Two)

Kidd and Defendants next move for summary judgment on Kidd's due process claim. Kidd's allegation of a denial of procedural due process stems from the City's alleged deprivation of such benefits as continued employment and an opportunity to be heard prior to termination, benefits that the MSO extends to permanent City employees.

Whether an individual has been denied procedural due process requires the Court to determine (1) if the individual possessed a protected interest such that due process protections were applicable, and, if so, (2) whether the individual was afforded an

_____

employee after his first two years of City employment; (2) keeping him in the position of a full-time unclassified employee even though he had never been given a fixed date of termination at the time he was hired; and (3) employing him as a seasonal employee for more than nine months per year for the term of his tenure with the City.  [Doc. 41 at 15].

[2]  The City argues that the latest Kidd could have filed a breach-of-contract action was September 8, 2000, since City records show that Kidd was rehired after a break in service on September 8, 1998, and September 8, 2000 would have been two years after the date of Kidd's rehire.  [Doc. 43 at 9].  The Court has tried to pinpoint the date of the alleged breach on the basis of Kidd's allegations as set forth in his pleadings. Even accepting the later date offered by the City, however, Kidd's contract claims still would be time-barred, since Kidd filed his *Complaint* on October 20, 2004.  [See Doc. 1, Exh. A at 1].

appropriate level of process. <u>Farthing v. City of Shawnee, Kan.</u>, 39 F.3d 1131, 1135 (10th Cir. 1994). In the case of a public employee, "the touchstone is whether, under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it." <u>Id.</u> Whether an employee possessed a protected property interest must be determined by reference to state law, and "any of several sources of state law, including a local government's personnel policy manual, can create a property interest protected by the Due Process Clause." <u>Hatfield v. Bd. of County Comm'rs for Converse County</u>, 52 F.3d 858, 863 (10th Cir. 1995). Central to the inquiry is whether the employee was an at-will employee at the time of termination. <u>Id.</u>

For the reasons stated in Section II.B.1. above, the Court cannot say as a matter of law that Kidd's original at-will employment relationship with the City was not modified.[3] Again, if Kidd was not a temporary employee "employed as such," the question remains whether he was properly labeled a member of the unclassified service. Since "[a]ll employees in the city service shall be divided into unclassified service and classified service[,]" if Kidd was not properly labeled an unclassified employee, he arguably should have been considered a classified employee. [<u>See</u> Doc. 43, Exh. C at § 3-1-6(A). If Kidd should have been considered a member of the classified service, then he was entitled to the due process protections he claims he was denied. Accordingly, summary judgment will be denied all parties as to Count Two.

_____

[3] Whether Kidd's at-will employment relationship with the City was modified is a separate issue from whether breach-of-contract claims arising from an alleged modified employment relationship are time-barred.

### 3. Wrongful Termination (Count Three)

Kidd and Defendants next move for summary judgment on Count Three, wherein Kidd asserts that he was wrongfully terminated in violation of public policy. [See Doc. 41 at 21]. "Governmental entities and public employees, while acting within the scope of duty, are granted immunity from liability from tort except as waived by the specific provisions of the Tort Claims Act." Derringer v. State, 68 P.3d 961, 965 (N.M.App. 2003) (concluding that prima facie tort is not included in the specific waiver provisions of the Tort Claims Act).

Sections 41-4-5 through 41-4-12 of the Tort Claims Act identify those torts for which governmental immunity is waived. Wrongful termination is not among them. See N.M.Stat.Ann. §§ 41-4-5 to 41-4-12. Because Kidd has not demonstrated that Defendants' actions in allegedly wrongfully terminating him fell within a recognized exception to the immunity granted by the Tort Claims Act, summary judgment will be entered for Defendants on Count Three. See Silva v. Town of Springer, 912 P.2d 304, 311 (N.M.App. 1996) (concluding that terminated town employees failed to show that tort of wrongful discharge fell within a recognized exception to the immunity afforded by the Tort Claims Act); see also Ortega v. Madrid, No. CIV 00-1414 JP/RLP (Memo.Op. and Order entered March 7, 2001) at 7 (explaining that wrongful termination is not among those torts for which the State of New Mexico has waived its immunity).

### 4. Violations of the Fair Labor Standards Act (Count Four)

Kidd's next claim is one for violations of the FLSA. Defendants have moved for summary judgment on Kidd's FLSA claim on the ground that Kidd has failed to present

13

sufficient evidence that would establish an entitlement to the overtime compensation he seeks. [Doc. 43 at 12-14]. In an action to recover overtime pay under the FLSA, the burden rests upon the employee to show that he performed overtime work for which he was not properly compensated "and to show the extent and amount of such work as a matter of just and reasonable inference." Mitchell v. Caldwell, 249 F.2d 10, 11 (10th Cir. 1957), *accord* Noorda v. Chaparral Fire Protection, Inc., 2005 WL 783072 at *2 (D.Utah 2005).

Kidd contends that Defendants' failure to compensate him for weekend and after-hours work where he trained children for, and transported them to, boxing tournaments resulted in violations of the minimum and overtime wage provisions of the FLSA. He seeks payment of back wages. [Doc. 1, Exh. A at 7]. The Court notes that in his deposition testimony, however, Kidd stated that his work training children to box was voluntary and that he did not expect to be paid for it. [Doc. 43, Exh. B, Apr. 25, 2005 depo. of Sammy Kidd at 26]. Kidd also testified that he was informed that he would not be paid to work overtime. [Id., Exh. B, Apr. 25, 2005 depo. of Sammy Kidd at 30]. He further explained that he never complained about working overtime and never submitted time sheets reflecting the overtime hours he now claims to have worked. [Id., Exh. B, Apr. 25, 2005 depo. of Sammy Kidd at 51-52]. Because the Court concludes that Kidd has failed to satisfy his burden of showing that he performed overtime work or, if he did, the extent and amount of that work, see Mitchell, 249 F.2d at 11, summary judgment will be entered for Defendants on Count Four.

### 5. Mandamus Relief (Count Five)

14

Kidd's final allegation is that, under the circumstances, his termination "constituted[d] the infliction of irreparable harm without due process of law in violation of the rules and ordinances of the City of Albuquerque."  [Doc. 1, Exh. A at 8].  As relief, Kidd requests

> preliminary and permanent injunctive relief or an extraordinary writ of mandamus or superintending control requiring the City of Albuquerque to hold a hearing, to reinstate him to a position of permanent, non-temporary, classified employment and to award the wages and benefits to which he was entitled as a permanent, classified employee.

[Id.].  Defendants move for summary judgment, asserting that Kidd has not been irreparably harmed and that, even if he prevails in this matter, he has an adequate remedy at law. Defendants also note that Kidd's requested relief is appointment to a permanent, classified position, but that he has not applied for one.  [Doc. 43 at 14-16].

"Mandamus relief is appropriate only when the person seeking such relief can show a duty owed to him by the government official to whom the writ is directed that is ministerial, clearly defined and peremptory." Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419, Broth. of Painters and Allied Trades, AFL-CIO v. Brown, 656 F.2d 564, 566 (10th Cir. 1981) (quoting Schulke v. United States, 544 F.2d 453, 455 (10th Cir. 1976).  Additionally, "[u]nder New Mexico law, 'mandamus lies to compel the performance of an affirmative act by [an official] where the duty to perform the act is clearly enjoined by law and where there is no other plain, speedy and adequate remedy in the ordinary course of law.'" County of Santa Fe, N.M. v. Public Serv. Co. of New Mexico, 311 F.3d 1031, 1035 (10th Cir. 2002) (quoting Lovato v. City of Albuquerque, 742 P.2d 499, 501 (N.M. 1987).

In this case, nothing in the record before the Court suggests that Defendants are obligated under a ministerial duty to appoint Kidd or anyone else to a permanent, classified position with the City.  In fact, the opposite may be true inasmuch as vacant positions are filled by a "post and bid" process whereby interested parties must apply for those jobs before an appointment is made.  Also, Kidd has not demonstrated that he has no plain, speedy, and adequate remedy other than the extraordinary relief he seeks.  For these reasons, summary judgment will be entered for Defendants on Count Five.

## C. Immunity

### 1. Individual Defendants' Entitlement to Qualified Immunity

Defendants' final argument is that all claims against the individual Defendants should be dismissed on the basis of qualified immunity, since Kidd has not shown that the actions of the individual Defendants violated a constitutional or statutory right that was clearly established at the time of the conduct at issue.  The City similarly asserts that it is immune from suit because that Kidd has not demonstrated that its alleged unconstitutional actions were representative of official policy or custom or that any such actions were carried out by an official with final policy making authority.  [Doc. 43 at 16-21].

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable  person would have known."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998) (internal quotations omitted).  "In the context of a summary judgment motion, to

16

prevail against a qualified immunity defense, the plaintiff must 'come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the violation occurred.'" Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1026 (10th Cir. 1994) (*quoting* Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988). Only if the plaintiff satisfies both elements does the defendant bear the normal burden of the summary-judgment movant of showing that no material factual issues remain to defeat his claim of qualified immunity. Id. A plaintiff ordinarily demonstrates that a law is clearly established by showing a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts has determined the law to be as the plaintiff maintains. Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (a right is clearly established if the contours of the right are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right.")

Plaintiff's burden in this situation is not a light one. Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992) ("A defendant government official need only raise the qualified immunity defense to shift the summary judgment burden to the plaintiff. This burden is quite heavy, for the plaintiff must do more than simply allege the violation of a general legal precept.") Also, a district court's determination as to whether the right is clearly established often turns on the level of generality to be applied, for "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter v. Dep't of Public Safety, 159 F.3d 1265, 1278 (10th

17

Cir. 1998).

This Court has concluded that the only one of Kidd's claims to survive summary judgment is that for the denial of procedural due process, as asserted in Count Two of the *Complaint*.  Whether Kidd prevails on this claim turns on whether his initial at-will employment relationship with the City was somehow modified such that he became entitled to the benefits and protections covering members of the classified service.  To survive the individual Defendants' invocation of qualified immunity, Kidd must show that the MSO and PRR created "a clearly established right to his continued employment, such that [the individual Defendants] or  . . . objectively reasonable official[s] similarly situated, would have known [they] could not terminate [Kidd] without affording him procedural due process . . . ."  Cockrell v. Bd. of Regents of NMSU, 983 P.2d 427, 430 (N.M. App. 1999).  It is the clarity of the employment relationship, or the lack thereof, that may well determine whether legal rights were clearly established at the time of discharge, however those right might ultimately be defined at trial for breach of contract.  Id. at 431.  Here, as in Cockrell, success for Kidd success depends on his ability to establish an implied contractual expectancy in continued employment.  However, "contractual ambiguity regarding the existence of a legitimate expectancy in continued employment makes it difficult to demonstrate that a summary discharge violated clearly established rights in the discharged employee." Cockrell, 983 P.2d at 431; see also Derda v. City of Brighton, Colo., 53 F.3d 1162, 1166 (10th Cir. 1995) (where it was unclear that Colorado statute intended to confer on employees an interest in continued employment, plaintiff had, at a minimum, failed to demonstrate that

18

any right violated was clearly established at the time she was terminated). Because a factual issue must be resolved in order to determine whether Kidd had a property interest in continued employment, Kidd could not have had a "'clearly established right to employment of which the [individual D]efendants should reasonably have known.'" Mitchell v. Coffey County Hosp., 903 F.Supp. 1415, 1426-27 (D.Kan. 1995) (quoting Staneart v. Bd. of Trs. of Ransom Mem'l Hosp., 684 F.Supp. 1573, 1578 (D.Kan.1988)). The individual Defendants are therefore entitled to qualified immunity.

### 2. Municipal Liability

While municipalities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights, a municipality will not be held liable for the actions of its employees under a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-691 (1978). Instead, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" causing the complained-of injury. Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1177 (10th Cir. 2003). An unconstitutional deprivation is caused by a municipal "policy" if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself. "Custom" has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403, 404 (1997).

In this case, the Court concludes that the City is not entitled to immunity, since evidence in the record establishes that there were City employees in addition to Kidd who

19

were labeled "temporary" or "seasonal" but not actually employed as such.  For example, currently pending before the Court is *Plaintiff's Motion for Class Action Certification*, in which Kidd seeks to represent a class of City employees who were labeled as "temporary" or "seasonal" but who worked in their "temporary" positions for more than 2 years without a fixed termination date or as "seasonal" employees for more than 9 months in a 12-month period.  [See Doc. 32 at 1].  According to Kidd, he and the proposed class members were denied the wages, benefits, working conditions, and rights of classified employment, including but not limited to, the right to continued employment in the absence of just cause for discipline, due process, and equal protection of the laws.  [Id. at 2].  Kidd represents that the proposed class members number more than 70 in the Department of Family and Community Services alone, and that his claims are typical of those of the proposed class.  [Id. at 2-3].  The Court determines that Kidd's allegations are sufficient to raise a genuine dispute of material fact as to whether the City had a custom of treating its "temporary" and "seasonal" employees as Kidd maintains.  Cf. Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir. 1995).  For that reason, the City is not entitled to the immunity it seeks.

## D. Motion to Strike Exhibits [Doc. 50]

Defendants next move to strike Exhibits 2, 5, 6, 7, and 8 to Kidd's motion for partial summary judgment.  [Doc. 50].  Defendants assert that these exhibits do not conform to the requirements of Fed.R.Civ.P. 56(e) because (1) they are unidentified and unauthenticated (Exhs. 5-8); (2) they do not support Kidd's claim for partial summary judgment and are irrelevant for the purpose of his motion (Exhs. 6-8); and (3) Kidd failed to mention or refer

to them in his brief (Exhs. 2 and 8).  [Id. at 3-6].  The party moving for summary judgment bears the initial responsibility of informing the Court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)).  Only admissible evidence may be considered by a Court entertaining a summary-judgment motion, though "[e]vidence that is neither authenticated nor admissible 'may be considered by the district Court unless the opposing party affirmatively raises the issue of the defect.'"  Steele v. Jennings, 2005 WL 2124152 at *3 (S.D.Ohio 2005) (quoting McQuain v. Ebner Furnaces, Inc., 55 F.Supp.2d 763, 770 (N.D.Ohio 1999)).

With respect to Exhibits 5, 6, and 7, Kidd contends that because Defendants produced them, they must be authentic.  [See Doc. 67 at 2-3].  However, "[s]imply because the Defendants produced the documents does not make them authentic—production does not equate to authentication."  Steele, 2005 WL 2124152 at *3.  Although counsel for Kidd has attached to the response to the motion to strike an affidavit swearing that Exhibits 5, 6, and 7 were produced by the City in response to interrogatories propounded to Defendant Valorie Vigil, [Doc. 67, Sept. 23, 2005 affidavit of Paul Livingston], the affidavit does not make any statement indicating that Exhibits 5, 6, and 7 are true, complete, or correct.  See Appleby v. Glaxo Wellcome, Inc., 2005 WL 3440440 at * 3 (D.N.J. 2005) (striking exhibit for which counsel provided affidavit claiming personal knowledge but failing to establish the genuineness of the exhibit or indicate it was true, complete, or correct).  For this reason,

21

Defendants' motion to strike will be granted as to Exhibits 5, 6, and 7.

The motion will also be granted with respect to Exhibit 8.  Exhibit 8 consists of Internet new articles detailing lawsuits brought by long-time temporary employees and so-called "permatemps" in other jurisdictions.  [See Doc. 41, Exh. 8].  Assuming without deciding that the articles included in Exhibit 8 have been established as genuine, true, complete, and correct, they appear to be offered to prove the truth of the information reported therein and, as such, constitute hearsay.  Where a party offers newspaper articles to prove the information contained in them, they are hearsay and may not be considered on a motion for summary judgment.  Good v. Board of County Comm'rs of County of Shawnee, Kan., 331 F.Supp.2d 1315, 1327 (D.Kan. 2004) (quoting Chicago Firefighters Local 2 v. City of Chicago, 249 F.3d 649, 654 (7th Cir.), cert. denied, 534 U.S. 995 (2001)).  According, Exhibit 8 will be stricken.

Defendants lastly move to strike Exhibit 2 on the ground that it was not referenced in Kidd's motion for partial summary judgment, which "provides the inference that [Exhibit 2 does] not support either a factual assertion or an argument presented by plaintiff in his brief."  [Doc. 50 at 5-6].  The Court disagrees that Exhibit 2, the affidavit of Kidd's father, supports neither a factual assertion nor an argument presented by Kidd.  To the contrary, in Exhibit 2 Tony Castro represents that, on two separate occasions, City personnel informed him that certain temporary employees might be considered permanent.  [See Doc. 41, Exh. 2 at 2-3].  Such an allegation bears on the issue of whether Kidd's initial at-will employment relationship with the City was at some point modified, which, in turn, is relevant to the claim

in Count Two that Kidd was denied benefits and protections extended to permanent City employees.  Because the Court concludes that Exhibit 2 is relevant, the motion to strike will be denied with respect to this exhibit.

## III. CONCLUSION

Based upon the foregoing, *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support* is denied; *Defendants' Motion for Summary Judgment* is granted in part and denied in part; and *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* is granted in part and denied in part.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support* [Doc. 41] is **DENIED**;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 42] is **GRANTED** to the extent that the individual Defendants (Martin Chavez, James Lewis, Valorie Vigil) assert the defense of qualified immunity;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 42] is **GRANTED** as to Counts One, Three, Four, and Five;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 42] is **DENIED** to the extent the City of Albuquerque asserts the defense of qualified

immunity;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 42] is **DENIED** as to Count Two;

**IT IS FURTHER ORDERED** that *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* [Doc. 50] is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* [Doc. 50] is **GRANTED** as to Exhibits 5, 6, 7, and 8;

**IT IS FURTHER ORDERED** that *Defendants' Motion to Strike Exhibits 2, 5, 6, 7, and 8 to Plaintiff's Motion and Memorandum for Partial Summary Judgment and Memorandum in Support Thereof* [Doc. 50] is **DENIED** as to Exhibit 2.

**SO ORDERED** this 31st day of March, 2006, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

25