IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAMMY KIDD,

     Plaintiff,

    vs.                                   No. **04-CV-1355 MCA/ACT**

CITY OF ALBUQUERQUE, NEW MEXICO,
MARTIN CHAVEZ, Mayor,
JAMES LEWIS, Chief Administrative Officer,
and VALERIE VIGIL, Director of Family and
Community Services,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Plaintiff's Motion for Class Action Certification* [Doc. 32], filed July 18, 2005 and Plaintiff's *Unopposed Motion for Entry of Stipulated Order Granting Class Action Certification* [Doc. 46], filed August 16, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court conditionally grants *Plaintiff's Motion for Class Action Certification* and denies as moot Plaintiff's *Unopposed Motion for Entry of Stipulated Order Granting Class Action Certification*.

## I. BACKGROUND

The following allegations are taken from Plaintiff Sammy Kidd's *Complaint for Breach of Employment Contract, Wrongful Termination, Denial of Due Process, Violations of the Fair Labor Standards Act, and Mandamus or Injunctive Relief*, as attached to

Defendants' *Notice of Removal*.  [Doc. 1].  For purposes of class-action certification

pursuant to Fed.R.Civ.P. 23, the Court accepts the substantive allegations of the *Complaint*

as true.  See  J.B. v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir.1999).

Sammy Kidd began working for the City of Albuquerque as a student aide in 1987.

In 1994, Kidd secured a position as a temporary recreation leader with the City.  That year,

Kidd began working in the City's boxing program and by 1995 was running the Northside

Boxing Club Program.  In this capacity, Kidd was working just under 40 hours per week and

also acting as the community center's manager.  The Northside program closed in 1999 and

Kidd moved on to the Barelas Community Center's boxing program.  He worked as a

recreation leader and boxing trainer at Barelas until it closed in 2001.  In 2001, Kidd

transferred to the Jack Candelaria Community Center where he worked as a boxing trainer

and supervisor of the boxing program.  [Doc. 1, Exh. A at 2].

Although Kidd worked for more than ten years without a break in service, he had

always been considered and paid as a "temporary" employee, never earning more than $7.00

per hour.  Additionally, during his tenure with the City, Kidd worked with children at the

community centers outside his regular work hours without receiving compensation.  This

work including taking the children on weekend trips to attend and participate in boxing

matches and tournaments.  Kidd was not compensated for this weekend work.  [Doc. 1, Exh.

A at 2-3].

On July 26, 2004, Kidd received a memo from Patricia D. Miller, Director of Human

Resources, notifying him of his termination, effective August 6, 2004.  On August 16, 2004,

Kidd, through counsel, requested that Chief Administrative Officer (CAO) James Lewis set

aside the termination and reclassify Kidd as a permanent employee.  Alternatively, counsel

asked that the matter be set for a hearing in accordance with the applicable section of the

City's Merit System Ordinance ("MSO").  Counsel's requests were ignored.  Because Kidd

was deemed a temporary employee, he was not eligible for benefits provided to regular,

permanent City employees.  Because he was deemed an at-will employee, Kidd was denied

access to the City's grievance procedures.  [Doc. 1, Exh. A at 3-4].

On October 20, 2004, Kidd filed his five-count *Complaint* against the City, Mayor

Martin Chavez, CAO Lewis, and Director of Department and Family Community Services

Valorie Vigil.  [Doc. 1, Exh. A at 1].  Count One asserts a claim for breach of employment

contract, alleging that Kidd and the City were parties to a contract of employment consisting

of the MSO and its Personnel Rules and Regulations ("PRR").  The MSO divides City

employees into classified and unclassified employees, the latter group being made up of,

among others, temporary and seasonal employees.  The PRR defines a temporary employee

as one who was given a termination date at the time of hire and whose length of service may

not exceed two years.  A seasonal employee is defined as one who has been hired to work

no more than 9 months in a 12-month period.  In light of these MSO and PRR provisions,

Kidd alleged that Defendants breached their contractual duties "by failing to either terminate

Plaintiff's employment or reclassify him as a permanent, classified employee after his first

two years of City employment." [Id. at 4-5].   Moreover, by then treating Kidd as a

temporary employee when he was effectively permanent, Defendants breached the

employment contract by denying Kidd benefits received by permanent employees. [Id. at

5].

Count Two asserts that Defendants violated Kidd's right to due process, explaining

that because Kidd was effectively a permanent employee, he had a property interest in his

employment and could not be terminated without pre- and post-termination hearings. [Doc.

1, Exh. A at 5-6].   Count Three asserts a claim of wrongful termination and seeks

reinstatement and reclassification as a classified employee, as well as a award of back pay

and benefits. [Id. at 6-7].   In Count Four, Kidd contends that Defendants violated the Fair

Labor Standards Act ("FLSA") by failing to compensate him for after-hours and weekend

work. [Id. at 7].   Finally, in Count Five Kidd seeks injunctive or extraordinary relief in the

form of a hearing, reinstatement to a permanent, classified position, and "the wages and

benefits to which he was entitled as a permanent, classified employee." [Id. at 7-8].

Currently before the Court is Kidd's motion for class-action certification, in which

he seeks to represent the following:

> all persons employed by the City of Albuquerque: a) who were
> labeled and treated as unclassified "temporary" City employees
> but who worked in such "temporary" positions in excess of two
> years and/or were not given a fixed dates of termination at the
> time they were hired; and/or b) who have been labeled and
> treated as unclassified "seasonal" City employees but who
> worked in such "seasonal" positions for more than nine months
> in any single year.

[Doc. 32 at 1].  Although Kidd was part of the City's Department of Family and Community

Services ("DFCS"), the proposed class includes, but is not limited to, employees of the

DFCS, the Parks and Recreation Department, the Cultural Affairs Department, the Solid

Waste Management Department, and the Corrections and Detention Department.

Defendants agree only to certification of a class of seasonal DFCS employees whose claims

were or could now be filed within the applicable statute of limitations for the claims asserted

by Kidd.  [Doc. 83 at 1].

On March 31, 2006, this Court entered a *Memorandum Opinion and Order* in which

the Court entered summary judgment against Kidd on Counts One, Three, Four, and Five.

The Court also granted the individual Defendants' request for qualified immunity, though

the City's request for immunity was denied.  Obviously, Kidd's motion for class-action

certification must be evaluated in the context of the sole remaining claim, *i.e.*, that of the

violation of his right to procedural due process, as set forth in Count Two.

## II. ANALYSIS

### A. Rule 23(a)

A district court may certify a class only if, after rigorous analysis, it determines that

the proposed class satisfies the prerequisites of Rule 23 (a) of the Federal Rules of Civil

Procedure. J.B., 186 F.3d at 1287-88. Rule 23(a) imposes the following four prerequisites

for class certification:

> (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to

the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Id. at 1288 (*quoting* Fed.R.Civ.P. 23(a)).    Additionally, those seeking declaratory or injunctive relief must meet the requirements of Rule 23(b)(2), which states that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).  Finally, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir.1982).  The merits of the action do not factor into the class-certification determination.  Id.; Shook v. El Paso County, 386 F.3d 963, 971 (10th Cir. 2005).

### 1. Numerosity

The first step toward obtaining class certification is to demonstrate that the proposed class is so numerous that joinder of all members is impracticable.  See Paton v. New Mexico Highlands Univ., 275 F.3d 1274, 1278 (10th Cir. 2002).  While "[i]n class action suits there must be presented some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement[, t]here is . . . no set formula to determine if the class is so numerous that it should be so certified." Rex v. Owens ex rel. State of Okl., 585 F.2d 432, 436 (10th Cir. 1978).  Still, the party

proposing the class "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." Id.   At least one court has certified a class of as few as 20 members, see Arkansas Ed. Ass'n v. Bd. of Ed. of Portland, 446 F.2d 763, 765 (8th Cir. 1971), and the Tenth Circuit has approved certification of a class of 46 plaintiffs.  Horn v. Associated Wholesale Grocers, Inc., 555 F.2d 270, 271 (10th Cir. 1977).

Defendant does not challenge the initially proposed class on the basis of numerosity. [See Doc. 83 at 6].  Defendant, however, believes that the class should be limited to those employees who were deemed "seasonal," since, according to Defendant, Kidd "ha[d] been classified as a seasonal worker throughout his tenure." [Doc. 83 at 2, 6].  Defendant asserts that the total number of class members is 1,188, which number represents those seasonal employees terminated by DFCS in the relevant time frame, with 26 seasonal employees terminated the same day as Kidd.  [Id. at 6].  Kidd estimates that "the number of fired employees in the Family and Community Services Department alone is more than seventy (70)."  [Doc. 33 at 10].  Kidd further contends that the proposed class should include employees from other City departments.   Under either party's calculation, the Court concludes that the numerosity requirement has been satisfied.

### 2. Commonality

The Court's next task is to determine the element of commonality, which is usually easily met, as it requires only that the named plaintiff share at least one question of fact or

law with the grievances of the prospective class.  Baby Neal for and by Kanter v. Casey, 43

F.3d 48, 56 (3rd Cir. 1994).  The Tenth Circuit has explained that the standard for satisfying

the commonality requirement of Fed.R.Civ.P. 23(a)(2) is not a particularly demanding one.

See Monreal v. Potter, 367 F.3d 1224, 1237 (10th Cir. 2004).  In this case, Defendant appears

to contest the existence of questions of law or fact common to the class only to the extent

that Kidd defines the class as including (1) current and former City employees and

(2) seasonal and temporary workers.  [Doc. 83 at 6-7].  The Court addresses Defendant's

concerns in reverse order.

The Court is not persuaded by Defendant's argument that "[Kidd's] claims are

common only to those of other seasonal employees."  [Doc. 83 at 7].  Although Defendant

has attached to its Response an affidavit of Paula Ramsey, DFCS Division Manager, in

which she states that Kidd was hired as a seasonal employee and was classified a seasonal

employee throughout his tenure with the City, an interoffice memo from Director of Human

Resources Miller to Kidd notifies him that he was "being released from temporary

employment with the City of Albuquerque [and that his] termination as a temporary

employee should in no way reflect on the quality of [his] work."  [See Doc. 83; Exh. A,

Memo of July 26, 2004].  Additionally, in a "Request for Termination" entered August 10,

2004 by Amanda Sanchez, the stated reason for Kidd's termination appears as "Release from

temporary employment."  [See Doc. 86, Exh. 5].  Furthermore, in its *Answer* to Kidd's

*Complaint*, Defendant admitted that Kidd had worked for the City as a "temporary"

employee.[1]  [Doc. 3 at 2, ¶ 9].  For these reasons, the Court believes that, to the extent Kidd

and the proposed class members share common questions of law and/or fact, these questions

are shared among both "seasonal" and "temporary" City employees.

### 3. Typicality

"A representative's individual claim must be typical of the claims of the class

members he seeks to represent."  Rector v. City and County of Denver, 348 F.3d 935, 949-

950 (10th Cir. 2003).  The typicality requirement, however, does not demand that every

member of the class be in a situation identical to that of the named plaintiff.  Milonas v.

Williams, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied* 460 U.S. 1069 (1983).  Rather,

as long as the representative's claims are not "significantly antagonistic" to the claims of the

proposed class, the typicality element is satisfied.  See Heartland Communications, Inc. v.

Sprint Corp., 161 F.R.D. 111, 116 (D.Kan. 1995).

With respect to Kidd's representation of temporary employees, Defendants here make

---

[1]  Kidd's *Complaint* contains the following factual allegation:

9. Plaintiff has worked for the City for more than 12 years without a break in
service. Throughout his employment with the City, Plaintiff has been considered
and paid as a "temporary" employee. He has never been paid more than $7.00 per
hour.

Defendant's *Answer* states as follows:

9. In response to the allegations contained in paragraph 9 of plaintiff's complaint,
defendants deny that plaintiff has worked for the City for 12 years without a break
in service. Defendants admit the remaining allegations in paragraph 9.

[Doc. 1, Exh. A at 2, ¶ 9; Doc. 3 at 2, ¶ 9].

the same argument that they make respecting commonality—that Kidd's claims are not typical of those of temporary City employees. [Doc. 83 at 7-8]. For the reasons set forth in Section II.A.2. above, however, the Court rejects this argument.

Defendant also contends that Kidd has not demonstrated that his interests are typical of those of other DFCS seasonal employees, since he "and the other individuals in the class evidently preferred to work in their seasonal and temporary capacities, choosing not to apply for permanent positions." [Doc. 83 at 8]. Kidd's interests, however, need not be identical to those of the proposed class members; it is sufficient that his interests not be significantly antagonistic to the claims of the proposed class. See Milonas, 691 F.2d at 938; Heartland, 161 F.R.D. at 116. The Court concludes that Kidd's interests are typical of those of the class members he seeks to represent.

### 4. Fair and Adequate Representation

The final determination to be made pursuant to Rule 23(a) is whether the representative parties will fairly and adequately protect the interests of the class. Shook v. El Paso County, 386 F.3d 963, 971 (10th Cir. 2004) (*citing* Fed.R.Civ.P. 23(a)(4). Defendant contends that counsel may not be able to provide adequate representation in this case because, as a sole practitioner, counsel "will not have the resources to notify potential class members or conduct the litigation . . . ." [Doc. 83 at 9]. The fact that counsel is a solo practitioner does not on its own defeat a finding that counsel will be able to provide fair and adequate representation for the proposed class. See Gates v. Cook, 234 F.3d 221, 229 (5th

Cir. 2000) (fact that class counsel was sole practitioner with limited resources, without more, did not justify substitution of counsel, as "numerous solo practitioners have demonstrated their ability and zeal in prosecuting even very large class actions."). Accordingly, the Court rejects Defendant's argument with respect to the adequate-representation element of Rule 23(a).

### B. Rule 23(b)

Having satisfied the threshold elements of Rule 23(a), the Court now turns to whether this action is maintainable as a class action under one of the subsections of Rule 23(b).[2] See

---

[2] Rule 23(b) states:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management

11

Fed.R.Civ.P. 23(b); see also Shook, 386 F.3d at 971.  Defendant does not dispute that "a

class of seasonal employees could satisfy the requirements of Rule 23(b) [and] agree[s] that

plaintiff's claims are typical of those of other seasonal employees and that a decision on the

merits of the claims could be inconsistent if brought in separate actions."  [Doc. 83 at 9].

Defendant restates its belief that the certified class should be limited to former seasonal

DFCS employees.  [See id.].  It is Kidd's position that this action is maintainable as a class

action under any of Rule 23(b)'s three subsections.  [See Doc. 33 at 9-14].

     The Court concludes that this action is maintainable as a class action pursuant to

either subsection (b)(1)(A) or (b)(2), but more properly under the latter.  This determination

is based upon the fact that the only viable claim that remains after this Court's March 31,

2006 *Memorandum Opinion and Order* is that set forth in Count Two for the deprivation

of procedural due process.  Notwithstanding the conclusion that this action is maintainable

as a class action, the Court is unable to determine the precise scope of the proposed class.

While Kidd defines the class as all incorrectly labeled seasonal and temporary employees of

the City in various departments, [see Doc. 32 at 1-2], the City would limit the class to

seasonal employees of the DFCS.  [See Doc. 83 at 1].

     This matter will be conditionally certified as a class of former seasonal and temporary

employees, pending a more definitive determination of the scope of the proposed class, to

include the relevant time frame of employment, and whether the class members are

---

    of a class action.

representative of only the City's DFCS, or whether the class members are to be representative of numerous other City departments.  See Scott v. Parham, 69 F.R.D. 324, 326-327 (N.D.Ga. 1975) (tentatively certifying class so as to "allow[] the case to proceed for the time being as a class action until such time as there [was] sufficient evidence to determine the existence and scope of the class more definitively"); see also 32B AM. JUR. 2d *Federal Courts* § 2026 (2005) (discussing conditional orders of maintainability).

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff Sammy Kidd has satisfied the threshold requirements for class-action certification as set forth in Fed.R.Civ.P. 23(a).  The Court further concludes that this action is maintainable as a class action pursuant to Fed.R.Civ.P. 23(b)(2).   For these reasons, *Plaintiff's Motion for Class Action Certification* will be conditionally granted pending a more definitive determination of the scope and members of the proposed class.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Motion for Class Action Certification* [Doc. 32] is **CONDITIONALLY GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Unopposed Motion for Entry of Stipulated Order Granting Class Action Certification* [Doc. 46] is **DENIED AS MOOT.**

**SO ORDERED** this 31st day of March, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

14