# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**SAMMY KIDD**, **et al.,**

      Plaintiffs,

      vs.                              No. 04cv1355 MCA/ACT

**CITY OF ALBUQUERQUE, NEW MEXICO,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant City of Albuquerque's *Motion in Limine* [Doc. 208], filed November 30, 2009. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

## I. BACKGROUND AND ANALYSIS

The relevant facts of this matter have been set out in numerous previous *Opinions* of this Court [see Docs. 111; 168; 192], and will be restated here only as they are necessary to an understanding of the currently pending *Motion in Limine*.

Plaintiff Sammy Kidd is a former employee of the City of Albuquerque ("the City") who began working for the City as a student aide in 1987. In 1994, Mr. Kidd secured a position as a temporary recreation leader with the City and began working in its boxing program. Between 1994 and 2004, Mr. Kidd moved between City community centers, working variously as community center manager; boxing trainer; and program manager.

[Doc. 128 at 2-3].  It is undisputed that Mr. Kidd worked for the City for 12 months each year over a continuous period of more than 10 years. [Id. at 3; Doc. 131 at 2]. Notwithstanding, since 1994, Mr. Kidd was considered and paid as an unclassified "temporary"or "seasonal" employee. [Doc. 128 at 3].

On July 26, 2004, Mr. Kidd received a memo from the City's Director of Human Resources, notifying him of his termination, effective August 6, 2004.  On August 16, 2004, Mr. Kidd, through counsel, requested that the City's Chief Administrative Officer set aside the termination and reclassify him as a permanent employee.  Alternatively, counsel asked that the matter be set for a hearing in accordance with the applicable section of the City's Merit System Ordinance.  Neither occurred.   [Doc. 128 at 4-5].

On October 20, 2004, Mr. Kidd filed his *Complaint* against the City and individual City employees, alleging (1) breach of the employment contract that arose from the terms of the City's Merit System Ordinance ("the MSO") and its Personnel Rules and Regulations ("the PRR"); (2) violation of his right to procedural due process as a result of being terminated without an opportunity to be heard; (3) wrongful termination; and (4) violation of the Fair Labor Standards Act.  Mr. Kidd sought, among other things, injunctive or extraordinary relief in the form of a hearing, and reinstatement to a permanent, classified position.  [See Doc. 1, Exh. A].

Both sides then moved for summary judgment. [See Docs. 41, 42].  Additionally, Mr. Kidd sought certification of a class of all persons employed or previously employed by the City and allegedly erroneously labeled and treated as temporary or seasonal workers.  [See

Doc. 46].  Once this Court disposed of the summary-judgment motions, the sole remaining defendant was the City, and the only count that remained was the procedural due process claim set forth in Count 2 of the *Complaint*.   [See Doc. 111].  In its March 31, 2006 *Order* disposing of these initial summary-judgment motions, this Court concluded that, at that point in the proceedings, it was not possible to determine as a matter of law that, given the totality of the circumstances, Mr. Kidd's original at-will employment relationship with the City had *not* been modified, such that he might have been able to assert a legitimate claim of entitlement to continued employment. [See Doc. 111 at 11-12].  Among other things, the Court questioned what it means to be a temporary or seasonal employee "employed as such" for purposes of the MSO's inclusion of such workers as members of the unclassified service. [Id. at 7].

In a separate *Order* also entered March 31, 2006, the Court conditionally certified a class of plaintiffs, pending a more definitive determination of the scope and members of that proposed class. [See Doc. 112 at 13].

The magistrate judge thereafter set new discovery and dispositive-motions deadlines. As is relevant here, the City moved for summary judgment with respect to Mr. Kidd's procedural due process claim. [See Doc. 138 at 9-13].  Denying the motion, the Court "return[ed] to the concern it identified in its March 31, 2006 *Memorandum Opinion and Order*, to wit: what does it mean to be a temporary or seasonal employee '*employed as such*'?" [Doc. 168 at 13-14].  The Court also noted that, given affidavit and deposition testimony that had been submitted with the supplemental summary-judgment motions,

"rather than clarify the issue, the supplemental pleadings . . . raised additional questions as to what it meant—at least insofar as Mr. Kidd is concerned— to have been a temporary or seasonal employee 'employed as such.'" [Id. at 15].

The matter continued to move forward and at a status conference held July 18, 2008, counsel for the City expressed the City's interest in settling the case, but noted that, to do that, the City required clarification on certain issues.  Accordingly, the Court ordered simultaneous briefing on the issues of (1) break-in-service length that would allow inclusion in the class; and (2) available remedies.

Once briefing was complete, the Court issued an *Order* in which it clarified the previously defined class to include the following:

> (1) former "temporary" employees of the City of Albuquerque who were not given termination dates at the time of appointment and whose length of service exceeded two (2) years, and who were so employed without missing a paycheck; and
>
> (2) former "seasonal" employees of the City of Albuquerque who worked more than nine (9) months in a twelve (12) consecutive month period, and who were so employed without missing a paycheck; and
>
> whose alleged injury (*i.e.*, termination without process) occurred within the three-year period preceding the filing of Mr. Kidd's motion for class certification (*i.e.*, not earlier than July 18, 2002).

[Doc. 192 at 12].

As to the issue of available remedies, the Court first repeated that "a jury question exists as to whether Mr. Kidd's original employment contract was modified such that he

4

should have been considered a member of the City's classified service and, thus, afforded the due process protections he was denied prior to his termination." [Doc. 192 at 16].  The Court then explained that "*[i]f* a jury were to answer this question in the affirmative, Mr. Kidd would first be entitled to notice and a hearing. . . . This matter would *then* be remanded to the relevant City entity for the issuance of notice and holding of a hearing." [Id. (emphasis added)].  The Court continued:

> As a class, however, the plaintiffs are entitled to no more, since additional remedies beyond notice, hearing, and the monetary award discussed above would require that individual proceedings be held on behalf of each individual class member (*to determine, for example, which, if any, class members would have been terminated notwithstanding the due process violation*).

[Id. at 19 (emphasis added)].

This restriction was based, at least in part, on the Court's interpretation of Dargis v. Sheahan, in which the Seventh Circuit affirmed the district court's decision to direct the Cook County (IL) Sheriff's Office to hold a hearing on the issue of the employment status of an injured correctional officer who had brought an ADA/42 U.S.C. § 1983 action against the Office, alleging that the Office had violated his due process rights by not providing him with a hearing prior to placing him on leave.  Dargis v. Sheahan, 526 F.3d 981, 982 (7th Cir. 2008).

On appeal, the plaintiff argued, among other things, that the district court erred by directing the Sheriff's Office to hold a hearing instead of proceeding to trial on his claim for damages, fees. and other relief.  Dargis, 526 F.3d at 984.  The Seventh Circuit rejected this

argument.  Instead, it determined that "the district court correctly decided that the Merit Board could better determine whether [the plaintiff's] placement on involuntary unpaid leave was justified."  Id. at 990.  For one thing, explained the circuit, if the district court were the entity to consider whether the plaintiff's leave was justified, that court "would be placed in the incongruous position of considering whether to award compensation to [the plaintiff] in the form of lost wages for a job it had found him unable to perform[,]" as it already had concluded that the plaintiff had failed to establish a prima facie case under the ADA.  Id. Additionally, because procedural due process "'protect[s] persons not from the deprivation, but from the *mistaken or unjustified* deprivation of life, liberty, or property[,]" id. (*quoting* Carey v. Piphus, 435 U.S. 247, 259 (1978) (emphasis in Dargis), a plaintiff that would have suffered the same fate had the required hearing been held would not be entitled to recover damages caused by the suspension.  In that case, an award of damages for injuries caused by a justified suspension imposed without a hearing would amount to a windfall rather than compensation.  Id.

        In this case, the Court has *consistently* identified the issue for the jury's consideration as whether Sammy Kidd's original at-will employment contract with the City was modified such that he should have been considered a member of the City's classified service and, thus, afforded the due process protections he was denied prior to termination. [See Doc. 111 at 5-8; Doc. 168 at 13-15; Doc. 192 at 16].  In the equivalent of a judicial roadmap, the Court has also explained that "[i]f a jury were to answer this question in the affirmative, Mr. Kidd would first be entitled to notice and a hearing [and the] matter would then be remanded to

the relevant City entity for the issuance of notice and holding of a hearing." [Doc. 192 at 16]. While the Dargis reasoning was persuasive to this Court, an additional reason exists for limiting the issue at trial in the instant case to whether City conduct effectively converted at-will employees into members of the classified service—the fact that this action is a class action.

As the Court previously explained when it certified the class, this matter is well-suited to class action because "Mr. Kidd alleges a systemic wrong, inasmuch as he charges the City with violating city-wide policies respecting 'temporary' and 'seasonal' workers who were not truly 'employed as such.'" [Doc. 168 at 23]. Accordingly, "various aspects of the City's conduct, as well as the meaning of the 'employed as such' language, will be paramount" at trial. [Id. at 21]. By contrast, the individual factual inquiries that would be required for a determination as to whether class members were terminated without just cause would negate the commonality and typicality requirements that are prerequisites of a class action. See Fed.R.Civ.P. 23(a); J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1288-89 (10th Cir. 1999). Thus, while it is appropriate to consider the City's course of conduct in a class action, the same cannot be said with respect to the issue of whether class members were terminated without just cause.

## II. CONCLUSION

For the foregoing reasons, the Court concludes that the sole issue to be presented at trial is whether Mr. Kidd's original employment contract was modified such that he should have been considered a member of the City's classified service and, thus, afforded the due

7

process protections he was denied prior to his termination.  Whether there existed just cause to terminate Mr. Kidd or any of the other class members is *not* an issue to be covered a trial.

**IT IS, THEREFORE, ORDERED** that Defendant City of Albuquerque's *Motion in Limine* [Doc. 209] is **GRANTED**.

**SO ORDERED** this 30th day of September, 2010, in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge